## SALINA STATE BANK v. HENRY BURR.

### No. 284.

1. LANDLORD'S LIEN—*Terms of Lease.* The statutory lien of a landlord upon crops growing or made upon a rented farm is not divested by reason of the following clause inserted in a lease: "To be paid at the time and from the proceeds of the first sale of the crop of broom-corn that may be raised on said land by said second party."

2. ———— *Waiver—Question for Court.* The waiver of a landlord's lien is usually a question of fact, but where all of the facts tending to establish the waiver are undisputed their legal sufficiency for that purpose should be determined by the court.

3. ———— *Advancements by Third Party—Possession.* Where a bank, without possession, makes advancements to pay for the harvesting of a crop, and secures the same by a chattel mortgage from the tenant, while the crop remains upon the leased premises, no lien is created thereby as against the statutory lien given the landlord.

Error from Saline district court; R. F. THOMPSON, judge. Opinion filed January 31, 1898. Affirmed.

*Bond & Osborn,* for plaintiff in error.

*Burch & Burch,* for defendant in error.

The opinion of the court was delivered by

McELROY, J.: This action in replevin was brought by the Salina State Bank against Henry Burr to recover the possession of twelve tons of broom-corn in bales. The plaintiff alleged special ownership in the property by virtue of a chattel mortgage executed by J. B. Cummings and B. F. Brown. The defendant answered, admitting the plaintiff's corporate existence, the execution and delivery of the mortgage, that defendant was in possession of the broom-corn, and denied all other allegations of the petition.

In the spring of 1895 J. B. Cummings leased certain land from Henry Burr for the purpose of plant-

ing broom-corn; the consideration named in the lease was $200, to be paid as follows: "To be paid at the time and from the proceeds of the first sale of the crop of broom-corn that may be raised on said land by said second party and also all seed that may be cleaned off said crop of broom-corn." The broom-corn was planted and Cummings took Brown into partnership with him in the venture. The evidence tends to show that about the time the crop was ready to be harvested Cummings applied to Burr for a loan of money to pay the expense of harvesting. Burr declined to make the loan. Cummings then stated that he thought he could borrow the money from Pierce, the president of the plaintiff bank, but made no statement to Burr as to any proposed mortgage of the crop or security for the loan. At about the same date Brown had a conversation with Burr about the loan, and said that they — Cummings and Brown — would have to borrow money on the crop to harvest it with. To these statements Burr made no reply. Cummings and Brown, on September 13, 1895, mortgaged the crop of broom-corn to the Salina State Bank for $500, with which they paid the expenses of harvesting the crop. After the broom-corn was harvested and baled, it was left in the possession of Burr. The plaintiff in error attempted to take possession of the broom-corn under its mortgage, which was refused by Burr, who claimed that he was entitled to hold the same until the rent was paid. The plaintiff in error brought this action, and judgment was rendered for defendant. The plaintiff brings the case to this court to secure the reversal of the judgment of the trial court, and alleges error:

I. In that the court refused to instruct the jury: "By the terms of the lease introduced in evidence, the defendant authorized the sale of the broom-corn freed

Bank v. Burr.

1. Landlord's lien not divested when lease says rent shall be paid out of proceeds of crop.

from the landlord's lien.'' The defendant, Burr, had a lien upon the broom-corn which continued until the rent was paid, or until the lien was waived, relinquished, lost, or otherwise divested. And while the property remains upon the leased premises it affords notice of such lien to all who deal with the tenant. Any rent due for farming lands shall be a lien on the crop growing or made on the premises. (Gen. Stat. 1897, vol. 2, ch. 121, § 26 ; *Scully v. Porter*, 57 Kan. 322.)

The broom-corn in controversy was the crop of 1895, raised upon the farm lands belonging to the defendant, by his lessee, Cummings. The premises were held under the terms of a written contract of lease. This lease covered the use of the premises for the season of 1895. For the use of the premises Cummings agreed to pay rent as follows :

''To pay to said party of the first part the sum of $200 in the manner following : $200 to be paid at the time and from the proceeds of the first sale of the crop of broom-corn that may be raised on said land by said second party and also all seed that may be cleaned off said crop of broom-corn.''

The mortgage under which the plaintiff claimed the property in controversy was dated September 13, 1895. The broom-corn remained upon the leased premises at all times until this action was commenced. At that time the rent was unpaid. The bank knew Burr was the owner of the farm and buildings. Under the facts developed in this case, Burr had a landlord's lien on the crops raised upon the premises unless such lien was waived. The clause of the lease above set out does not constitute a waiver of the landlord's lien. There is no special agreement therein contained inconsistent with the existence of the lien, nor from which

a waiver of the lien may be fairly inferred.    The instruction was properly refused.

II.  That the court erred in refusing to give the following instruction to the jury :  " If you find from the evidence that the defendant consented that the tenant should pledge the broom-corn to raise the money with which to harvest, you should find for the plaintiff."  The evidence

2. Waiver of landlord's lien, when question for court.

upon this question is, in substance, as follows :  B. F. Brown testified that he had a talk with Mr. Burr about a week before this note and mortgage were executed, and told him that their money was all invested in the crop and that they had no money with which to harvest the crop, and requested a loan of money from Mr. Burr for that purpose, which was declined ; that in the conversation witness told Burr that Cummings thought he could borrow the money from Mr. Pierce ; that witness told Burr that they had to borrow the money on the crop to harvest it with ; and that Burr made no reply to any of his statements.

J. B. Cummings testified that he asked Mr. Burr for a loan of money with which to harvest the crop, which loan was declined ; that he told Burr that he thought he could borrow the money of Mr. Pierce ; that Burr said that if he could not he might plow the crop under.   There was nothing said in the conversation about what was proposed to be given for security.

This testimony is all that was offered for the purpose of showing a waiver on the part of Mr. Burr of his lien, and is wholly insufficient to establish the fact of a waiver.   There was not sufficient evidence of a waiver to justify the court in submitting the question to the jury.  Waiver is usually a question of fact, but where all of the facts tending to establish the waiver are undisputed  their legal sufficiency for that

purpose is to be determined by the court. ( 28 Am. & Eng. Encyc. of Law, 535.) The instruction, not being based upon or applicable to the facts of this case, was properly refused.

III. Complaint is made that the trial court erred ·in instructing the jury : "The defendant under his lease with Mr. Cummings is entitled to a lien upon the crop raised upon the premises leased by Cum-mings of the defendant for the payment of $200 as rent, mentioned in the contract herein referred to." The defendant in error did not waive his lien by the terms of the lease. The testimony concerning the borrowing of money and mortgaging the crop did not tend to prove waiver on the part of Burr. Taking all the testimony bearing upon this question in its strongest sense, it was legally insufficient to establish waiver. It was the duty of the court therefore to declare the legal relations of the parties, which was properly done in this instruction. The court properly instructed the jury as to the rights of Burr under the ·lease.

*3. Landlord's lien not divested by tenant's chattel mortgage*

IV. The plaintiff in error contends that it acquired a lien upon the property superior to that of Burr, by making advances to the tenant for the purpose of preserving the property, and that such lien would entitle the bank to maintain replevin to obtain possession. The plaintiff's cause of action, as set out in the petition, was founded upon other rights. In replevin, the plaintiff is required to set out in his petition his ownership of the property, and if he has a special ownership he must state the facts in relation thereto. In the case at bar the petition sets up a special ownership by reason of a chattel mortgage, and the plaintiff in error elected to rely upon the special ownership by reason

*4. Party must recover, if at all, upon claim set up in pleadings.*

of the chattel mortgage and alleged facts constituting such ownership as a basis for its recovery. There is no allegation in the pleading to justify the plaintiff in this contention.

As a rule, common-law liens depend upon possession, and without possession there is no lien. Without possession of the broom-corn the bank could have no lien thereon, no matter what the nature, purpose or amount of its advancement might be. (2 Kent's Com. 635.) The common law gave no lien upon crops for advancements made for the purpose of raising them, neither does our statute give any such lien; hence, none exists. The verdict and judgment are in accord with and are supported by the evidence.

The motion for a new trial was properly overruled and the judgment must be affirmed.